Filed 8/4/26  P. v. Colin CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>SOCORRO VIDAL COLIN,<br><br>    Defendant and Appellant. | D085618<br><br><br><br>(Super. Ct. No. SCN310433) |

APPEAL from a judgment of the Superior Court of San Diego County, Daniel F. Link, Judge.  Affirmed.

Ava R. Stralla, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Arlene A. Sevidal, Assistant Attorney General, Christopher P. Beesley and Kristen Kinnaird Chenelia, Deputy Attorneys General, for Plaintiff and Respondent.

Socorro Vidal Colin, a noncitizen, was deported to Mexico after she was convicted by a jury of two drug offenses and two counts of felony child abuse. She moved under Penal Code section 1473.7 to vacate her convictions, claiming that she would have tried to negotiate an immigration-safe plea rather than go to trial had she known that an adverse jury verdict on the charges would result in immigration consequences. Finding no basis in the record to substantiate Colin's contentions that she was unaware of the immigration consequences of being convicted at trial and/or that an immigration-neutral resolution was reasonably possible, we affirm the court's order denying her motion.

## FACTUAL AND PROCEDURAL BACKGROUND

In August 2013, a jury convicted Colin of one count of possessing heroin for sale (Health & Saf. Code, § 11351), one count of possessing methadone (*id.*, § 11350, subd. (a)), and two counts of felony child abuse (Pen. Code,[1] § 273a, subd. (a)). She was sentenced to an aggregate term of six years and four months in October 2013.[2] We affirmed the judgment in November 2014. (*People v. Colin* (Nov. 7, 2014, D064745) [nonpub. opn.].)

According to the probation report, these charges stemmed from Colin's arrest after she participated in a suspected drug transaction in September 2012. Colin admitted to the police (1) that there was heroin in the hotel room she was sharing with her two children—then three and five years old—and her codefendant; (2) that she used heroin in front of her children; and (3) that

---

[1] Subsequent undesignated statutory references are to the Penal Code.

[2] In March 2016, the court reduced Colin's conviction for possession of methadone to a misdemeanor.

2

she took them with her when she bought and sold illegal drugs. A search of the hotel room yielded heroin, including some within arm's reach of the three-year-old, and six bottles of liquid methadone. The children's blood tested positive for methamphetamine.

This appeal concerns the immigration consequences of these convictions. Colin, who was born in Mexico, claims she was lawfully brought into the United States by her mother and father in 1988 when she was four years old. Colin's mother and some of her siblings became naturalized United States citizens, Colin's three children are United States citizens, and her father was a lawful permanent resident (LPR). Colin, however, neither became a naturalized citizen nor completed an application to become an LPR despite having lived in the United States continuously since 1988.

Two weeks after her arrest, Colin signed a form acknowledgement of constitutional rights that included the following section 1016.5 advisement: "If I am not a citizen, and am convicted of a misdemeanor or felony[,] it may result in my deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States." Colin did not believe this warning applied to her because she considered herself to be lawfully residing in this country. This belief was misguided, as it turned out, because Colin was deported after serving her sentence in this case.

The record does not identify the legal bases for deporting Colin, but it is clear that her conviction for possessing heroin for sale was deportable

3

because, at a minimum, it was an "aggravated felony."[3]  (8 U.S.C. § 1227(a)(2)(A)(iii) ["Any alien who is convicted of an aggravated felony at any time after admission is deportable"]; 8 U.S.C. § 1101(a)(43)(B) ["illicit trafficking in a controlled substance" is an aggravated felony]; *Rendon v. Mukasey* (9th Cir. 2008) 520 F.3d 967, 970–977 [possessing a controlled substance for sale constitutes "illicit trafficking"].)  Because noncitizen aggravated felons are " 'ineligible for cancellation of removal, a form of discretionary relief," it is a "virtual certainty" that they will be deported no matter how long they have lived in the United States. (*People v. Carrillo* (2024) 101 Cal.App.5th 1, 16 (*Carrillo*); see *id.* at p. 15.)  And, as Colin recognizes, this conviction also permanently bars her from obtaining a visa or becoming a naturalized citizen.  (8 U.S.C. §§ 1101(f)(8), 1427, subd. (a)(3); *Castiglia v. INS* (9th Cir. 1997) 108 F.3d 1101, 1103.)

After failing to convince the Ninth Circuit Court of Appeals either to grant her derivative United States citizenship or protect her from removal (*Colin-Villavicencio v. Garland* (9th Cir. 2024) 108 F.4th 1103), Colin filed a motion in the superior court to vacate her convictions under section 1473.7, subdivision (a)(1).  In her supporting declaration, she claimed that her trial counsel, Cassandra Kinchin, did not discuss with her the immigration

---

[3]  Colin suggests that the immigration advisement did not apply to her because (1) she believed her LPR application was still pending and (2) it did not apply to someone living in the United States lawfully.  But even if she was an LPR when she committed these offenses, her aggravated felony conviction for possessing heroin for sale would have made her deportable. (8 U.S.C. § 1227(a)(2)(A)(iii); *Robles Lopez v. Sessions* (9th Cir. 2018) 901 F.3d 1071, 1074–1076.)  Moreover, Colin does not explain how her perceived lawful immigration status exempted her from the consequences of an advisement expressly addressed to a category of persons she knew she belonged to— someone who was "not a citizen."

4

consequences of being convicted of the charged offenses. Thus, Colin asserts, she assumed there would be no immigration consequences were she to be convicted at trial.

According to Colin, this assumption caused her to ask Kinchin to negotiate a plea that would result in no time in custody, rather than one that would minimize the risk of deportation. In Colin's words, it would have been "crazy" to go to trial and potentially face being removed to Mexico considering the length of time she lived in the United States and the connections she formed here. After the fact, in support of her motion, Colin identified a specific, immigration-neutral plea offer that she maintains she would have asked Kinchin to pursue.[4]

During the hearing on Colin's motions, Kinchin testified by video conference. She did not remember the details of Colin's case or any specific conversations about potential immigration consequences. But Kinchin said she had no reason to believe that she failed in Colin's case to follow her "standard practice" of discussing these consequences with her client.

There was no testimony from the deputy district attorney who prosecuted Colin; thus, there was no evidence about the parties' actual plea negotiations. The prosecutor who handled Colin's section 1473.7 motion represented that the People's "post-prelim" offer to Colin would have required her to plead guilty to the charges of possessing heroin for sale and felony

[4] Colin proposed pleading guilty to (1) a violation of Health & Safety Code section 11350, subdivision (a), with no specific controlled substance identified, (2) to both felony child abuse charges with stipulations to a 364-day sentence and that the conduct only exposed the children to a health risk, and (3) felony charges of false imprisonment under section 236. In exchange, the People would have dismissed the charge of possessing heroin for sale. We accept, only for the purposes of this appeal, Colin's assertion that this proposal would have been immigration neutral.

child abuse with a stipulation to either a four-year sentence or a " '5-year lid.' " As for Colin's proposed resolution, the deputy district attorney said it would have been "so very quickly ... resoundingly rejected as not a realistic settlement for a case that had facts such as this case."

The court denied Colin's motion. It noted that the only evidence Colin was not advised of the potential immigration consequences came from her own declaration, which it disregarded as "self-serving." Kinchin's testimony did not "move the needle" in Colin's favor, the judge explained, because it provided "no reason to believe that [Colin] wasn't advised initially about [the immigration consequences], advised pre-prelim, advised pretrial." Moreover, "[t]here was no proof at all that any type of immigration-safe plea ever existed, given the nature of what occurred [and] the strength of the evidence." Ultimately, the court held that Colin's declaration and arguments were "speculative at best and/or self-serving and therefore do not qualify and get over the standard of preponderance of the evidence."

## DISCUSSION

A person no longer in criminal custody may move to vacate his or her conviction or sentence, whether derived from a plea or a trial, when it is "legally invalid due to prejudicial error damaging the moving party's ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a conviction or sentence." (*Carrillo*, *supra*, 101 Cal.App.5th at p. 20; see § 1473.7, subd. (a)(1).) Colin claims the trial court erred in denying her section 1473.7 motion because her declaration shows she did not understand the immigration consequences of going to trial and that an immigration-safe resolution to her case was

6

available.[5] The People counter that the circumstances described in the record show that Colin *did* understand there would be immigration consequences were she to be convicted of the charged offenses and that there was no chance that the immigration-safe resolution she proposed would have been accepted.

Colin was required to establish three things by a preponderance of the evidence to prevail on her motion: (1) she "did not meaningfully understand" the immigration consequences of a conviction, (2) "a reasonable probability that [s]he would not have proceeded to a jury trial had [s]he understood the immigration consequences," and (3) "a reasonable probability that such a[n alternative] path would have resulted in an immigration-neutral outcome." (*People v. Avena* (2026) 119 Cal.App.5th 624, 632 [required showings]; see § 1473.7, subd. (f)(1) [preponderance standard].) "A reasonable probability does not mean more likely than not. [Citation.] Instead, it means merely a reasonable chance, which is more than an abstract possibility. [Citation.] In other words, a reasonable probability is a probability sufficient to undermine confidence in the outcome." (*Carrillo*, *supra*, 119 Cal.App.5th at p. 19.)

We independently review the denial of a motion to vacate brought under section 1473.7, subdivision (a)(1). (*People v. Padron* (2025) 109 Cal.App.5th 950, 959.) In doing so, we exercise our " 'independent judgment

---

[5] Colin also moved under section 1016.5, subdivision (a) to vacate her convictions on the theory that the immigration advisement she received was invalid under *People v. Lopez* (2022) 83 Cal.App.5th 698. We do not address her challenge to the court's order denying this avenue of relief because section 1016.5, by its plain terms, requires this warning only "[p]rior to acceptance of a plea of guilty or nolo contendere." (Accord *People v. Gutierrez* (2025) 113 Cal.App.5th 906, 910, fn. 4 [section 1016.5 "does not apply to defendant because he was convicted after a jury trial, not pursuant to a plea agreement"].)

to determine whether the facts satisfy the rule of law,' " giving "particular deference" to any factual determinations that are based on " ' "the credibility of witnesses the [superior court] heard and observed." ' " (*People v. Vivar* (2021) 11 Cal.5th 510, 527.)  Applying this standard of review leads us to the same conclusions the trial court reached.

Starting with the first step of the analysis, "[a] defendant's assertion as to his or her state of mind is not accepted at face value by courts evaluating a section 1473.7 motion.  Such assertions must be corroborated with objective evidence." (*Carrillo, supra*, 101 Cal.App.5th at p. 17.)  The primary evidence of Colin's alleged lack of understanding of the immigration consequences of a conviction at trial comes from the assertion in her own declaration that Kinchin did not explain them to her.  But the trial court found that the only witness who could corroborate Colin's testimony—attorney Kinchin— testified, essentially, that she *did* discuss those potential consequences.  Given the deference we must give this finding and the absence of any independent evidence to support Colin's claim, the trial court properly declined to credit her declaration testimony.

Also lacking in the record is sufficient evidence that an immigration-neutral outcome in this case was available.  For her part, Colin merely proposes a desired immigration-safe resolution; she omits any basis for us to conclude that there was a reasonable chance the People, or the court for that matter, would have accepted it.  (See *Carrillo, supra*, 101 Cal.App.5th at pp. 21–22.)  Indeed, the prosecutor represented that Colin's proposed offer would most certainly have been rejected as unrealistic based on the facts of the case, a very reasonable conclusion given the physical evidence and Colin's admissions.  Further, the People's plea offer—which Colin does not suggest is misrepresented—would, if accepted, have had the same immigration

8

consequences as the conviction she suffered following trial.  With no other supporting evidence, we cannot infer there is any reasonable likelihood the People would have drastically changed their negotiating posture just to address Colin's immigration concerns, which at the time a prosecutor did not need to consider when attempting to resolve a case.[6]

## DISPOSITION

The order denying Colin's motion to vacate her convictions is affirmed.


DATO, Acting P. J.

WE CONCUR:


BUCHANAN, J.


RUBIN, J.

---

[6] The trial in this case occurred before the enactment of section 1016.3, which in subdivision (b) states that "[t]he prosecution, in the interests of justice ... shall consider the avoidance of adverse immigration consequences in the plea negotiation process as one factor in an effort to reach a just resolution." (See Stats. 2015, ch. 705, § 2; *Carrillo*, *supra*, 101 Cal.App.5th at p. 22, fn. 7.)